```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

JAMES VAN LAW,                         :

      Plaintiff,                    :

V.                                     :    CASE NO. 3:09-CV-1183 (RNC)

PROFICIO MORTGAGE VENTURES,            :
LLC, ET AL.,                           :

      Defendants.                   :

<u>RULING AND ORDER</u>

     Plaintiff James Van Law, a Connecticut resident, brings this diversity case against nonresident individuals and corporations asserting various state law claims arising out of an alleged merger agreement. He seeks damages for breach of contract (count 1), tortious interference with a business relationship (count 2), violations of the Connecticut Unfair Trade Practices Act ("CUTPA")(counts 3 and 4), and defamation (count 5). Defendants include Proficio Bank, its wholly-owned subsidiary Proficio Mortgage Ventures ("PMV"), PMV's employee and agent David Griggs, First Fidelity Capital Markets ("First Fidelity"), its agent Elliot Jacobs, and Ellie Mae, Inc. ("Ellie Mae"). Proficio Bank, First Fidelity, Griggs and Jacobs have moved to dismiss for lack of personal jurisdiction. For the reasons that follow, these motions are granted as to counts 3 and 5, and denied as to counts 1, 2 and 4. Proficio Bank, First Fidelity, Griggs, Jacobs, PMV and Ellie Mae also have moved to dismiss for failure to state a claim on which relief can be granted. The motions to dismiss for

failure to state a claim are denied.

I. Background

The complaint alleges the following facts. Over a period of time, plaintiff developed a team of mortgage originators and loan officers around the country who originated a high volume of residential mortgage loans. On February 14, 2009, he engaged in telephone and email negotiations with defendant Ellie Mae, through its agent, Richard Roof, to merge his team into a joint venture with PMV, First Fidelity and Ellie Mae. During the week of February 15, 2009, he had further telephone and email conversations with Roof, Griggs and other employees of all four corporate defendants. In those communications, the defendants encouraged him to proceed with the merger. He transmitted a business plan to the defendants by email showing the profitability of the proposed merger and requested compensation valued at $45,000 per month. Roof assured the plaintiff that they had a deal. Plaintiff was in Connecticut throughout these negotiations.

During the week of February 22, 2009, all the parties quickly moved to implement the merger and discussed the location of PMV branches in Connecticut. On or about March 3, 2009, Griggs hosted a "Welcome to Proficio Kick Off" call with plaintiff and his entire team. Plaintiff was provided with business cards and received an email from PMV human resources

2

welcoming him.  Plaintiff was introduced to PMV's management team as "our new sales guy in the Ellie Mae joint venture."

On March 5-6, 2009, fifteen of plaintiff's team members traveled to Florida to meet with PMV's officers and receive training.  Defendants executed employment contracts with several of the team members.  On March 6, Griggs and Jacobs informed the plaintiff that he would be paid only $10,000 per month rather than $45,000 per month.  On March 9, Griggs and Jacobs informed the plaintiff that the merger was off.  Plaintiff alleges that these actions constituted a breach of contract (count 1).

According to the complaint, the defendants' actions were part of a concerted effort to steal his team members.  This disrupted his business relationship with his team and disrupted his funding pipeline causing him to lose business.  Plaintiff alleges that defendants' actions constituted tortious interference with a business relationship and violated CUTPA (counts 2 and 4).

In order to salvage his business, the plaintiff contacted non-party Plains Capital Bank.  Plaintiff agreed with Plains Capital that he would merge his remaining team members with Plains Capital in exchange for $45,000 per month.  Plaintiff and his team members then conducted a conference call to discuss the merger with Plains Capital.  Shortly thereafter, Plains Capital informed the plaintiff that it no longer wished to do business

3

with him. Plaintiff learned that Griggs and Jacobs, acting on behalf of PMV and Fidelity, had been on the call eavesdropping. He alleges that after the call, Griggs and Jacobs contacted Plains Capital and disparaged him, resulting in the termination of his relationship with Plains Capital. Plaintiff contends that the defendants' actions make them liable for damages under CUTPA and the law of defamation. (counts 3 and 5).

II. <u>Discussion</u>

A. <u>Personal Jurisdiction</u>

Defendants Proficio Bank, Fidelity, Griggs and Jacobs move to dismiss for lack of personal jurisdiction.[1] To establish personal jurisdiction over a nonresident defendant, a plaintiff must demonstrate that the applicable long-arm statute reaches the defendant and that minimum contacts exist between the defendant and the forum to satisfy the requirements of due process. <u>Metropolitan Life Ins. Co. V. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566-67 (2d Cir. 1996). "[A] plaintiff must establish an independent basis for personal jurisdiction for each separate cause of action." <u>Delcath Systems, Inc. v. Enney</u>, No. 3:05-CV-1281 (JCH) 2006 WL 1525986, *3 (D. Conn. May 26, 2006). At the motion to dismiss stage, in the absence of an evidentiary hearing, a prima facie showing of jurisdiction is all that is

---

[1] Defendants PMV and Ellie Mae have not moved to dismiss for lack of personal jurisdiction.

4

required of the plaintiff and all doubts must be resolved in his favor. Id.

Long-Arm Statute - Griggs and Jacobs

Under Connecticut's long-arm statute, a court may exercise jurisdiction over a nonresident on a cause of action that arises when the nonresident:

> (1)[t]ransacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Conn. Gen. Stat. § 52-59b(a).

Plaintiff contends that jurisdiction exists over Griggs and Jacobs because they committed tortious acts within Connecticut. Torts committed by means of communications sent into the state can constitute tortious conduct in Connecticut. See Delcath, 2006 WL 1525986, at *3; Cody v. Ward, 954 F. Supp. 43, 45-46 (D. Conn. 1997); Knipple v. Viking Communications, LTD, 236 Conn. 602, 609-11 (1996)(applying similar language in the corporate

5

long-arm statute).[2]

Plaintiff's submissions are sufficient to sustain his burden of showing that Griggs and Jacobs committed tortious conduct in Connecticut with regard to count 2 (tortious interference with business relationships) and count 4 (violations of CUTPA by interfering with business relationships). Viewed most favorably to the plaintiff, the complaint alleges that Griggs and Jacobs sent communications to the plaintiff in Connecticut on several occasions in order to convince him to proceed with a sham merger so they could steal members of his team. The complaint alleges that during the week of February 15, 2009, the plaintiff had telephone and email negotiations with Griggs and other employees of the four corporate defendants in which the defendants encouraged him to proceed with the merger.[3] During the week of February 22, 2009, the parties discussed locating PMV branches in

---

[2] The cited cases involve communications that constituted a torts in themselves (i.e., misrepresentations). In the present case, the communications at issue allegedly were transmitted in furtherance of a conspiracy to steal plaintiff's team members resulting in clearly foreseeable harm to him in Connecticut. As such, they are sufficient to constitute tortious acts under § 52-59b(a)(2).

[3] The complaint does not specifically identify Jacobs as one of the individuals who communicated with the plaintiff about the merger. However, the complaint alleges that Jacobs was part of a conspiracy to steal plaintiff's team members by means of the sham merger and that "employees" of First Fidelity contacted the plaintiff. Reading these two allegations together and in the light most favorable to the plaintiff, the complaint adequately alleges that Jacobs sent tortious communications into Connecticut.

6

Connecticut.  The following week, Griggs hosted a kick off call with plaintiff.  At one point, plaintiff was introduced as PMV's "new sales guy in the Ellie Mae joint venture."  On March 9, 2009, Griggs and Jacobs informed the plaintiff that the merger was off.

The complaint is not sufficient to establish personal jurisdiction over Griggs and Jacobs with regard to count 3 (violations of CUTPA arising from interference with the Plains Capital merger).  Plaintiff alleges that Griggs and Jacobs listened in on a phone call between him and Plains Capital while he was in Connecticut, but he does not claim that Griggs or Jacobs sent any communications into the state.  The remainder of his allegations focus on the defendants' communications with Plains Capital, a Texas corporation, none of which occurred in Connecticut.[4]  In light of the long-arm statute's treatment of defamation claims, the complaint is also insufficient to

---

[4] Plaintiff contends that jurisdiction also exists with regard to these defendants because they transacted business in Connecticut, § 52-59b(a)(1), and committed tortious conduct outside Connecticut causing injury in Connecticut, § 52-59b(a)(3).  However, the alleged business transactions relate to the breach of contract claim, which has not been asserted against the individual defendants.  In order for tortious conduct outside of Connecticut to confer jurisdiction, defendants must either (A) regularly conduct or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in the state, or (B) expect the act to have consequences in the state and derive substantial revenue from interstate or international commerce.  Plaintiff has not established that either of these requirements is satisfied.

7

establish personal jurisdiction over Griggs and Jacobs with regard to count 5.

Long-Arm Statute - Proficio Bank and First Fidelity

The corporate long-arm statute provides jurisdiction over any cause of action arising "[o]ut of any contract made in this state or to be performed in this state." Conn. Gen. Stat. § 33-929(f)(1). Viewing the plaintiff's allegations in a light most favorable to him, he made a contract with these defendants in Connecticut when he accepted their offer over the telephone. See Pomazi v. Health Indus. of Am., Inc., 869 F. Supp. 102, 105 (D. Conn. 1994)(an oral contract entered into over the telephone is considered made in the state where a party accepts an offer). In addition, jurisdiction is proper because the contract was to be partially performed in Connecticut: plaintiff agreed to funnel his pipeline to the defendants from Connecticut, and the agreement involved opening PMV branches in Connecticut.[5] Accordingly, the Court has personal jurisdiction over Proficio Bank and First Fidelity with regard to the breach of contract claim in count one.

With regard to the tort claims against these defendants,

---

[5] Though this performance was to be made by parties other than Proficio Bank and First Fidelity, "jurisdiction is appropriate where the contract in question contemplated and required performance in this state by the plaintiff." Donner v. Knoa Corp., No. 3:01-CV-2171 (JCH), 2002 WL 31060366, at *4 (D. Conn. July 29, 2002). Plaintiff would presumably be involved in the opening of these additional branches.

8

Connecticut's long-arm statute provides that a foreign corporation will be subject to suit in Connecticut on any cause of action arising "out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." Conn. Gen. Stat. § 33-929(f)(4). The analysis under this statute is similar to the one conducted earlier under the statute applicable to individuals. See Cody, 954 F. Supp. at 45-46; Knipple, 236 Conn. at 609-11. In both instances, communications sent into the state can constitute tortious acts within the state.

The complaint alleges that Griggs was an agent of Proficio Bank,[6] that Jacobs was an employee of First Fidelity, and that Griggs and other employees of these two corporations contacted plaintiff in Connecticut and encouraged him to proceed with the merger. This is sufficient to establish jurisdiction over the corporate defendants with regard to counts 2 and 4.

Plaintiff's allegations are insufficient to establish personal jurisdiction over the corporate defendants with regard

---

[6] There is a discrepancy in the parties' submissions as to whether Griggs was in fact an employee of Proficio Bank when he contacted plaintiff. Both paragraph 4 of the complaint and Griggs' affidavit list him as an employee of PMV. The President of Proficio Bank, Brad Hardy, has submitted an affidavit attesting that Griggs has never been an employee of Proficio Bank. Paragraph 18 of the complaint indicates that Griggs was acting on behalf of both PMV and its parent Proficio Bank. At the motion to dismiss stage, this ambiguity must be resolved in favor of the plaintiff and Griggs must viewed as an agent of both PMV and Proficio Bank.

to count 3. None of the defendants' alleged interference with the relationship between the plaintiff and Plains Capital occurred in Connecticut.

The complaint is also insufficient to establish personal jurisdiction over First Fidelity and Proficio Bank with regard to count 5. The corporate long-arm statute does not specifically exclude defamation claims. However, none of the alleged defamatory communications between the corporate defendants, their agents and Plains Capital occurred in Connecticut.

In sum, the plaintiff has met his burden under the long-arm statutes as to counts 1, 2 and 4, but not as to counts 3 and 5. Accordingly, counts 3 and 5 are dismissed with regard to Griggs, Jacobs, First Fidelity and Proficio Bank.

### Due Process Minimum Contacts

Even though the requirements of the long-arm statutes are satisfied as to some of the claims in the complaint, the action must be dismissed if exercising personal jurisdiction over the defendants would offend due process. Due process is satisfied if the defendants have purposefully established minimum contacts with Connecticut. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Purposefully established contacts "result from actions taken by a defendant himself that create a substantial connection with the forum" such that he "should reasonably anticipate being haled into court there." Id. at 474-75

(internal quotations and citations omitted).

Applying this standard, defendants' contacts with the plaintiff in Connecticut satisfy due process requirements. According to the complaint, the defendants transmitted telephone and email communications into Connecticut in furtherance of an unlawful plan to steal the members of his team. In doing so, they "purposefully availed [themselves] of the benefits of the state" with the "foreseeable consequence of direct economic injury" to someone in the state. Vertrue Inc. V. Meshkin, 429 F. Supp. 2d 479, 496 (D. Conn. 2006) (quoting David v. Weitzman, 677 F. Supp. 95, 100 (D. Conn. 1987)).

Because the minimum contacts requirement is met, jurisdiction is proper unless exercising specific personal jurisdiction over the defendants would be unfair or unreasonable. Burger King, 471 U.S. at 477. Jacobs and First Fidelity contend that, as Florida residents, defending a lawsuit in Connecticut would be burdensome. However, they have not shown that litigating in Connecticut would be so costly as to be unfair or unreasonable. Moreover, plaintiff's corresponding interest in convenient relief and the forum state's interest in the case outweigh any potential inconvenience to the defendants. Vertrue, 429 F. Supp. 2d at 496.[7] Therefore, this Court's exercise of

---

[7] In addition, as plaintiff points out, the burden of litigating across long distances has been reduced due to teleconferencing and other advances in technology. Cody, 954 F.

specific personal jurisdiction does not offend due process, and defendants' motions to dismiss counts 1, 2 and 4 for lack of personal jurisdiction are denied.[8]

B. <u>Failure to State a Claim</u>

All the defendants have moved to dismiss the action for failure to state a claim on which relief can be granted. Under Rule 12(b)(6), a complaint is sufficient if it states a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

1. <u>Breach of Contract</u>

To state a claim for breach of contract under Connecticut law,[9] plaintiff must allege the existence of a contract, breach

---

Supp. at 47 fn. 9.

[8] Defendants Jacobs and Fidelity also contend that service was not proper because they were served by a state marshal via certified mail. Conn. Gen. Stat. § 52-59b(c) provides that a state marshal may serve any nonresident individual over whom a court may exercise personal jurisdiction as provided in § 52-59b(a) by leaving a copy of the summons with the Secretary of State and by mailing a certified copy to the defendant's last-known address. As outlined above, Jacobs is subject to jurisdiction in this Court under § 52-59b(a) because he allegedly committed a tortious act in this state. Accordingly, service upon him was proper.
As discussed in the text, Fidelity is a foreign corporation subject to suit here pursuant to Conn. Gen. Stat. § 33-929(f), the corporate long-arm statute. Such a defendant may be served by a state marshal via certified mail addressed to the secretary of the foreign corporation at its principal office. Conn. Gen. Stat. § 33-929(b). This appears to be the manner in which Fidelity was served.

[9] The parties seem to agree that Connecticut law governs the alleged contract.

12

of the contract and damages.  Rosato v. Mascardo, 82 Conn. App. 396, 411 (2004).  Count one of the complaint adequately pleads these elements.  Plaintiff claims that a merger agreement among the parties was reached over the course of a series of telephone calls involving all the corporate defendants and their agents.  He alleges that he was subsequently introduced by PMV management as "our new sales guy in the Ellie Mae joint venture," indicating that an agreement had been formed.  He further alleges that Proficio, PMV and First Fidelity (acting through their agents) breached the contract by offering him less money than originally agreed and terminating the merger.  Finally, he alleges that he suffered damages in the form of the lost income he would have received under the contract.  While the complaint indicates that the breach of the agreement was announced by representatives of Proficio, PMV, and First Fidelity, the allegations can fairly be read as indicating that Ellie Mae is also responsible for the breach.  Therefore, plaintiff has stated a claim for breach of contract against Proficio, PMV, First Fidelity and Ellie Mae.

    2. <u>Tortious Interference with a Business Relationship</u>

To state a claim for tortious interference, a plaintiff must allege the existence of a business relationship between himself and a third-party, that the defendant knew of and intentionally interfered with the relationship, that the interference was tortious, and that the interference caused plaintiff actual loss.

Appleton v. Bd. of Educ., 254 Conn. 205, 212-13 (2000).
Plaintiff alleges that he had a business relationship with members of his team. He claims that all defendants intentionally interfered with this relationship by convincing him to agree to a sham merger, inviting members of his team to a training session, then attempting to hire them before breaking off the merger deal. Plaintiff alleges that the loss of team members resulted in a loss of income. This is sufficient.

   3. CUTPA

Under CUTPA, a plaintiff must point to the existence of an unfair or deceptive trade practice and establish a reasonable estimate of the damage suffered. Beverly Hills Concepts, Inc. V. Schatz and Schatz, Ribicoff and Kotkin, 247 Conn. 48, 78-79 (1998). To determine whether a practice is unfair or deceptive, courts examine whether the practice (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and (3) causes substantial injury to consumers, competitors or other business people. Hartford Elec. Supply Co. V. Allen-Bradley Co., 250 Conn. 343, 367-68 (1998). The complaint, viewed most favorably to the plaintiff, properly pleads these elements with regard to count 4. In essence, it alleges that the defendants conspired to steal the plaintiff's team members through a course of concerted action involving deceit. Such conduct could be considered immoral, unscrupulous and offensive to public

policy.[10]  It also could have caused quantifiable damage to the plaintiff by reducing the stream of mortgages coming into his pipeline.[11]

    4. <u>Claims Relating to Plains Capital</u>

The CUTPA and defamation claims relating to Plains Capital remain to be considered as to PMV.  With regard to PMV, the CUTPA claim is adequately pleaded.  Plaintiff alleges that PMV, through its agent, eavesdropped on his telephone call with Plains Capital then called Plains Capital and disparaged him.  According to the plaintiff, PMV's actions caused Plains Capital to terminate its relationship with him.  These alleged actions by PMV, if true, could be considered unscrupulous.  Moreover, the alleged conduct caused damage to the plaintiff, a potential competitor of PMV.

    Similarly, the complaint states a claim for defamation

---

[10] The Connecticut Supreme Court has also established a test for identifying whether the injury to consumers or competitors is sufficiently substantial: the injury (1) must be substantial, (2) must not be outweighed by countervailing benefits to consumers or competition, and (3) must be an injury that consumers or competitors themselves could not have reasonably avoided. <u>Hartford Elec. Supply Co.</u>, 250 Conn. at 368.  The alleged injury here disrupted plaintiff's lucrative funding pipeline and mortgage business, and is therefore substantial.  There are no apparent countervailing competitive benefits to the defendants' alleged conduct.  It is not apparent that plaintiff could have reasonably avoided the injury.  Therefore, the alleged injury is sufficient to satisfy CUTPA.

[11] Defendant Ellie Mae moves to dismiss the CUTPA claim because a CUTPA claim may not be alleged for activities that are incidental to an entity's primary trade or commerce.  Ellie Mae is in the mortgage origination business and therefore the CUTPA claim is not incidental to its primary trade.

against PMV because it alleges that PMV published a defamatory statement about the plaintiff to Plains Capital.  As a result of the alleged defamatory statement, plaintiff's reputation was injured and Plains Capital terminated its relationship with him. <u>Cweklinsky v. Mobil Chemical Co.</u>, 267 Conn. 210, 217 (2004). According to the complaint, after having been on a conference call with PMV's agent, Griggs, Plains Capital indicated that they had heard negative things about plaintiff.  This gives rise to an inference that PMV was the source of those negative statements. Accordingly, as to PMV, count 5 states a claim.

III. <u>Conclusion</u>

For the foregoing reasons, defendants' motions to dismiss [docs. 42, 47, and 50] are hereby granted in part and denied in part.  Counts 3 and 5 are dismissed as to all defendants except PMV.  The rest of the claims survive.

So ordered this 30th day of September 2010.

                                        Robert N. Chatigny
                                   United States District Judge